RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 6/28/13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

JOHN P. BENJAMIN, D.D.S.  DOCKET NO.: 1:12-cv-00020

VERSUS

MAGISTRATE JUDGE JAMES D. KIRK

CAMPBELL HAUSFELD, ET AL.

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendant, Lowes Homes Center, on November 11, 2012 (Doc. 26). As plaintiff has filed his opposition to the motion and Lowes has filed it reply thereto, the matter is ripe for consideration.

### Background

Plaintiff, John P. Benjamin, D.D.S. ("Benjamin"), filed a petition for damages against Campbell Hausfeld, Lowes Homes Center, Inc. ("Lowes") and "ABC Insurance Company" in the Ninth Judicial District Court, Parish of Rapides, State of Louisiana on or about November 29, 2011 (Doc. 1-1). In the petition, Benjamin alleged that he purchased a stationary vertical air compressor manufactured by Campbell Hausfeld from Lowes on July 10, 2010. Benjamin contends he purchased the air compressor due to the promised "On Site Warranty Service".

In October, 2010, Benjamin began experiencing problems with the air compressor. Specifically, the tank would not fill with compressed air. Benjamin contacted three warranty service dealers

who refused to service the compressor. He then contacted Campbell Hausfeld's customer service department and was told by an employee named Ken to return the item to Lowes. Because the air compressor was bolted to the concrete slab and electrically wired, Benjamin decided to contact a mechanic to assist with the repair of the machine.

Benjamin had the mechanic remove the belt guard from the compressor and the two noticed the belt was frayed. The belt was removed and Benjamin went to Lowes in search of a replacement belt. The Lowes employee with whom he dealt advised they did not carry the belt but he might find one at a nearby Auto Zone.

Benjamin purchased a belt from Auto Zone and had the mechanic install it on the air compressor. Neither Benjamin nor the mechanic replaced the belt guard. Benjamin continued to operate the air compressor without the belt guard approximately a month before he began experiencing problems again.

Upon experiencing the problems, Benjamin again contacted Campbell Hausfeld customer service and spoke with Ken. He requested on site service but the request was refused. Instead, Ken again suggested Benjamin return the air compressor to Lowes and provided him with a return authorization number.

"Two days later, Dr. Benjamin turned the unit on. It appeared to him as if the belt was not moving. Without thinking, he touched the belt which grabbed his finger at the motor pulley and amputated

the end phalangeal joint of his left index finger." (Doc. 1-1, p. 6).

## The Law of Summary Judgment

As the Fifth Circuit Court of Appeals explained in <u>Seacor Holdings, Inc. v. Commonwealth Ins. Co.</u>, 2011 WL 983117 at *3 (5th Cir.2011):

> A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); see <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Effective December 1, 2010, Rule 56 has been amended, and the summary judgment standard is now reflected in Rule 56(a). The amended rule contains no substantive change to the standard. An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby. Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)[W]e consider all evidence in the light most favorable to the party resisting the motion. <u>Trevino v. Celanese Corp.</u>, 701 F.2d 397, 407 (5th Cir.1983).

(Quotations and internal footnote references omitted.)

## Analysis

### Louisiana Products Liability Act Claims

The Louisiana Products Liability Act ("LPLA") provides the exclusive theories of liability of manufacturers for damage caused by their products. La. R.S. 9:2800.52. The definition of a manufacturer under the LPLA is:

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:

>   (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
>
>   (b) A seller[1] of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
>
>   © A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.
>
>   (d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.

La. R.S. §9:2800.53(1).

Lowes does not meet the definition of a manufacturer and because the LPLA only applies to manufacturers, the only potentially viable claims are those set forth under theories of negligence.

---

[1] "Seller" means a person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value.  La. R.S. §9:2800.53(2).

Negligence Claims

Under Louisiana law, a non-manufacturer seller of a product has a duty to warn a purchaser only of defects of which it knows or should have known. However, unlike the manufacturer, it is not presumed to have knowledge of defects and a seller is not required to inspect a product to determine the possibility of non-apparent defects. Kelley v. Price-Macemon, Inc., 992 F.2d 1408 (5th Cir. 1993), cert. den. 114 S.Ct. 688 (1994); Hooper v. Crown, 555 So.2d 46 (La.App 1st Cir. 1989). There is no duty to warn against dangers which are obvious or which the buyer should be aware. Hopper, supra; Delanzo v. ABC Corp., 572 So.2d 648 (La. App 5th Cir. 1990).

The only evidence presented by Benjamin to show Lowes knew or should have known the air compressor was defective is a single instance of a consumer in the Northeast complaining to Lowes about a belt which malfunctioned after less than two weeks of use. There is no evidence that the problem was the same. Further, the report was made more than a year before Benjamin's accident and no other reports were made to Lowes by its customers or by Campbell Hausfeld. This single report of a malfunctioning belt is not sufficient to put Lowes on notice of a defect in the machines. Thus, there is no question of fact regarding whether the air compressor was defective much less that Lowes knew or should have known of and warned against the defect. Accordingly, there is neither a duty nor a breach of the duty to warn and those claims

should be dismissed with prejudice.

Benjamin also contends Lowes breached its duty to exercise reasonable care when its employee suggested Bejamin obtain a belt used on an automobile as a replacement for the worn Campbell Hausfeld belt, particularly in light of the on-site warranty. I do not find that Lowes owed plaintiff a duty to provide accurate information as to where replacement belts could be obtained. It was up to Benjamin to ensure that he was purchasing the right belt for the air compressor.

I also do not find that the employee's recommendation, or for that matter, Benjamin's choice of belts was the proximate cause of the amputation. Proximate cause is generally defined as any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred. <u>Sutton v. Duplessis</u>, 584 So.2d 362 (La.App. 4th Cir. 1991). The Louisiana Supreme Court has held that "[n]egligent conduct is a cause in fact of harm to another if it was a substantial factor in bringing about that harm". <u>Socorro v. City of New Orleans</u>, 579 So.2d 931, 939 (La. 1991), citing <u>Dixie Drive It Yourself Sys. V. American Beverage Co.</u>, 137 So.2d 298, 302 (La. 1962).

There is simply no evidence that the employee's recommendation, or for that matter, Benjamin's choice of belts, was a substantial factor in causing the amputation. The accident was

6

caused by Benjamin's act of removing the belt guard which was intended to prevent just this sort of accident. It was his choice not to replace the belt guard and that choice was not only a substantial factor in causing his injury but it was the proximate cause. Had the belt guard been in place, it would have protected him from his momentary lapse in judgment.

In summary, Lowes did not owe a duty to tell Benjamin what belt to use and the choice of a belt was not, in any event, the proximate cause of the amputation. Thus, the claims against Lowes should be dismissed with prejudice.

## CONCLUSION

In light of the foregoing,

**IT IS ORDERED** that the motion for summary judgment (Doc. 26) is **GRANTED** and Benjamin's claims are **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** in chambers at Alexandria, Louisiana this 28th day of June, 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

7