RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 6/28/13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

JOHN P. BENJAMIN, D.D.S.           DOCKET NO.: 1:12-cv-00020

VERSUS

                                    MAGISTRATE JUDGE JAMES D. KIRK
CAMPBELL HAUSFELD, ET AL.

## **MEMORANDUM RULING**

Before the court is a motion for summary judgment filed by defendant, Campbell Hausfeld on December 4, 2012 (Doc. 28). As plaintiff has filed his opposition to the motion and Campbell Hausfeld has filed it reply thereto, the matter is ripe for consideration.

### Background

Plaintiff, John P. Benjamin, D.D.S. ("Benjamin"), filed a petition for damages against Campbell Hausfeld, Lowes Homes Center, Inc. ("Lowes") and "ABC Insurance Company" in the Ninth Judicial District Court, Parish of Rapides, State of Louisiana on or about November 29, 2011 (Doc. 1-1). In the petition, Benjamin alleged that he purchased a stationary vertical air compressor manufactured by Campbell Hausfeld from Lowes on July 10, 2010. Benjamin contends he purchased the air compressor due to the promised "On Site Warranty Service".

In October, 2010, Benjamin began experiencing problems with the air compressor. Specifically, the tank would not fill with

compressed air. Benjamin contacted three warranty service dealers who refused to service the compressor. He then contacted Campbell Hausfeld's customer service department and was told by an employee named Ken to return the item to Lowes. Because the air compressor was bolted to the concrete slab and electrically wired, Benjamin decided to contact a mechanic to assist with the repair of the machine.

Benjamin had the mechanic remove the belt guard from the compressor and the two noticed the belt was frayed. The belt was removed and Benjamin went to Lowes in search of a replacement belt. The Lowes employee with whom he dealt advised they did not carry the belt but he might find one at a nearby Auto Zone.

Benjamin purchased a belt from Auto Zone and had the mechanic install it on the air compressor. Neither Benjamin nor the mechanic replaced the belt guard. Benjamin continued to operate the air compressor without the belt guard approximately a month before he began experiencing problems again.

Upon experiencing the problems, Benjamin again contacted Campbell Hausfeld customer service and spoke with Ken. He requested on site service but the request was refused. Instead, Ken again suggested Benjamin return the air compressor to Lowes and provided him with a return authorization number.

"Two days later, Dr. Benjamin turned the unit on. It appeared to him as if the belt was not moving. Without thinking, he touched

the belt which grabbed his finger at the motor pulley and amputated the end phalangeal joint of his left index finger." (Doc. 1-1, p. 6).

## The Law of Summary Judgment

As the Fifth Circuit Court of Appeals explained in <u>Seacor Holdings, Inc. v. Commonwealth Ins. Co.</u>, 2011 WL 983117 at *3 (5th Cir.2011):

> A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); see <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Effective December 1, 2010, Rule 56 has been amended, and the summary judgment standard is now reflected in Rule 56(a). The amended rule contains no substantive change to the standard. An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby. Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)[W]e consider all evidence in the light most favorable to the party resisting the motion. <u>Trevino v. Celanese Corp.</u>, 701 F.2d 397, 407 (5th Cir.1983).

(Quotations and internal footnote references omitted.)

## Analysis

### Louisiana Products Liability Act Claims

The Louisiana Products Liability Act ("LPLA") provides the exclusive theories of liability of manufacturers for damage caused by their products. In order to recover, the plaintiff must prove (1) that the damages were proximately caused by the characteristic of the product that renders it unreasonably dangerous, and (2) the damages arose from a "reasonably anticipated use of the product". <u>Kampen v. American Isuzu Motors, Inc.</u>, 157 F.3d 306 (5th Cir. 1998).

The LPLA defines reasonably anticipated use as "a use or handling of the product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La.R.S. 9:2800.53. In determining whether a particular use is "reasonably anticipated", several factors may be considered: whether the injured party used the product in a manner that was obviously dangerous; what the user was instructed to do and warned not to do with respect to the use of the product; whether the use of the product was expressly warned against in the product's labeling (or operations manual); and, the language of that warning, and the sophistication and experience of the user. Broussard v. Proctor and Gamble Co., 2006 WL 3392759 (W.D.La. 2006).

Once the use is determined to be "reasonably anticipated", the inquiry shifts to whether the product was defective in construction or composition (manufacturing), defective in design, contained an inadequate warning, or failed to conform to an express warranty. Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254 (5th Cir. 2002).

Campbell Hausfeld contends that Benjamin used the air compressor in a manner contrary to the manufacturer warnings when he operated it without the belt guard in place. This use was not a reasonably anticipated use so summary judgment should be granted.

Benjamin contends that his use was reasonably anticipated and

that Campbell Hausfeld knew or should have known its consumers were operating this model of air compressor without a belt guard in light of the fact it knew belts and belt guards were being replaced by consumers due to wear, tear and damage.

The issue of "reasonably anticipated use" is a threshold matter for any claim brought under the LPLA. "If a plaintiff's damages did not arise from a reasonably anticipated use of the product, then the 'unreasonably dangerous' question need not be reached. <u>Kampen</u>, 157 F.3d at 309. The Fifth Circuit has consistently determined that use is not confined to an ordinary and/or intended use of the product. It sometimes involves the plaintiff's negligent conduct. "[A] warning against a product *misuse* is relevant to assessing what uses of its product a manufacturer reasonably anticipates. When, in the face of such a warning, a plaintiff presents no evidence about whether the manufacturer should have reasonably expected users to disregard the warning, the plaintiff fails to meet the burden imposed on him by the LPLA." <u>Id.</u> at 314, citing La.R.S. §9:2800.54(D).

The LPLA requires a link between the damages sustained by the plaintiff and the reasonably anticipated use. In the instant case, the damage sustained by Benjamin, the lost of the first knuckle of his left index finger, was a result of operating the air compressor without the belt guard. Benjamin does not argue that the warnings were ineffective or inadequate, rather, he argues that Campbell

5

Hausfeld knew that other consumers were using the air compressors without belt guards, contrary to express warnings. In support, he cites the report of his expert witness, notes made in Campbell Hausfeld's customer service logs and the number of replacement belt guards issued over a five year period.

The plaintiff's expert witness stated that the belt guard was difficult to remove, even for a skilled mechanic. Customer service logs from Campbell Hausfeld show numerous calls about belts and belt guards being replaced due to premature wear, general wear and damage. Of particular note was a single entry which indicated that a customer intended to run his air compressor without the belt guard. The entry "mm approved nc" followed that entry. Though Benjamin contends this proves that Campbell Hausfeld (1) knew that people were operating their air compressors without a belt guard and (2) approved operation in that condition, Campbell Hausfeld indicated that the customer service agent's notation indicates he or she, "mm", approved replacement of the part at "nc", no charge. Finally, Benjamin contends the fact Campbell Hausfeld issued more than 7000 belt guard replacement parts in a five year period shows it knew consumers were operating the air compressors without a belt guard.

This evidence simply is not sufficient to create a genuine issue of fact with respect to whether Campbell Hausfeld knew or should have known that consumers were using the air compressor

without a belt guard. If anything, the issuance 7000 or so replacement parts for the belt guard indicates consumers were using guards. Otherwise, requests for replacement parts would not have been made. The fact that complaints of wear, tear and damage were lodged may indicate the belt guards were removed but, again, there is no evidence that the air compressors were operated while the belt guard was removed.[1] Even the one call noting the customer's intent to use the air compressor without the belt guard does not evidence the caller followed through in that manner. Instead, it shows that Campbell Hausfeld's customer service agent acknowledged that the intent was problematic and offered a free replacement part. Regardless, the one phone call does not establish a pattern of behavior which would rise to the level of putting Campbell Hausfeld on notice that operation of the air compressor without the belt guard was a "reasonably anticipated use".

Because the manner in which Benjamin operated the air compressor was not a "reasonably anticipated use", an inquiry of whether the air compressor was unreasonably dangerous under one of the four theories set forth above is unnecessary. Thus, Benjamin's products liability claims against Campbell Hausfeld should be dismissed with prejudice.

<u>Negligence Claims</u>

As the LPLA provides the exclusive theories of liability of

---

[1] The guards are made to be removed so that the belt can be serviced.

7

manufacturers for damage caused by their products, all of Benjamin's state law claims for negligence should be dismissed with prejudice.

## CONCLUSION

**IT IS ORDERED** that the motion for summary judgment (Doc. 28) is **GRANTED** and Benjamin's claims are **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** in chambers at Alexandria, Louisiana this 28th day of June, 2013.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE